1   MITCHELL SILBERBERG & KNUPP LLP
    Robert H. Rotstein (SBN: 72452)
2   11377 West Olympic Boulevard
    Los Angeles, California 90064-1683
3   Telephone: (310) 312-2000
    Facsimile: (310) 312-3100
4   rxr@msk.com

5   LATHAM & WATKINS
    Daniel Scott Schecter (SBN: 171472)
6   355 S. Grand Avenue
    Los Angeles, California 90071
7   Telephone: (213) 485-1234
    Facsimile: (213) 891-8765
8   daniel.schecter@lw.com

9   LATHAM & WATKINS
    Natalie Prescott (SBN: 246988)
10  600 West Broadway, Suite 1800
    San Diego, California  92101
11  Telephone:  (619) 236-1234
    Facsimile:  (619) 696-7419
12  natalie.prescott@lw.com

13  Attorneys for Defendants,
    Twentieth Century Fox Film Corporation (erroneously sued as
14  "Twentieth Century Fox"); Dune Entertainment LLC (erroneously
    sued as "Dune Entertainment, Inc."); Lightstorm Entertainment, Inc.
15  (erroneously sued as "Light Storm Entertainment, Inc."), and James
    Cameron
16

17              UNITED STATES DISTRICT COURT

18            SOUTHERN DISTRICT OF CALIFORNIA

19                    SAN DIEGO DIVISION

| | |
|---|---|
| 20  KELLY VAN, | CASE NO.  10-CV-1051 AJB WVG |
| 21        Plaintiff, | Judge:      Hon. Anthony J. Battaglia |
| 22        v. | Courtroom: 12<br>Date:       February 10, 2012<br>Time:       1:30 p.m. |
| 23  JAMES CAMERON; TWENTIETH<br>CENTURY FOX; DUNE ENTERTAINMENT,<br>24  INC; INGENIOUS FILM PARTNERS 2;<br>FUTURE SERVICE INC.; LIGHT STORM<br>25  ENTERTAINMENT, INC.; DOES 2-10, | **MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN OPPOSITION TO**<br>**PLAINTIFF'S MOTION FOR RELIEF**<br>**FROM JUDGMENT UNDER FED. R. CIV.**<br>**PRO. 60(B)(1) AND 60(B)(6)** |
| 26        Defendants. | |

27

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL BACKGROUND ...................................................................... 1

III. THE STANDARDS FOR RELIEF UNDER RULE 60(b)(1) AND 60(b)(6) ................... 3

IV. NO EXTRAORDINARY CIRCUMSTANCES EXIST TO JUSTIFY
RELIEF UNDER RULE 60(b)(6) .......................................................................... 5

V. THE MIRCH LAW FIRM'S CONDUCT DOES NOT JUSTIFY RELIEF
UNDER RULE 60(B)(1) .......................................................................................... 7

VI. THE COURT CORRECTLY DISMISSED PLAINTIFF'S CLAIMS ON
THE MERITS ........................................................................................................ 8

    A. *THE SUBSTANTIAL SIMILARITY STANDARD* .................................. 8

    B. *PLAINTIFF YET AGAIN FAILS TO APPLY THE EXTRINSIC TEST
PROPERLY* ...................................................................................... 10

    C. *THERE IS NO SUBSTANTIAL SIMILARITY BASED ON
COMBINED UNPROTECTED ELEMENTS* ........................................ 17

VII. CONCLUSION .................................................................................................. 18

Mitchell
Silberberg &
Knupp LLP

4259333.1

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

## CASES

4
5
*Bateman v. U.S. Postal Serv.*,
    231 F.3d 1220 (9th Cir. 2000).........................................................................3

6
*Benay v. Warner Bros. Entm't, Inc.*,
    607 F.3d 620 (9th Cir. 2010)................................................................passim

7
8
*Bisson-Dath v. Sony Comp. Entm't Am. Inc.*,
    653 F.3d 898 (9th Cir. 2011)..........................................................................7

9
10
*Bisson-Dath v. Sony Comp. Entm't Am. Inc.*,
    694 F. Supp. 2d 1071 (N.D. Cal. 2010) .........................................7, 9, 13, 18

11
*Briones v. Riviera Hotel & Casino*,
    116 F.3d 379 (9th Cir. 1997)..........................................................................4

12
13
*Campbell v. The Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ...................................................16, 17

14
15
*Capcom Co., Ltd, v. The MKR Group, Inc.*,
    No. C 08-0904 RS, 2008 U.S. Dist. LEXIS 83836 (N.D. Cal. Oct. 10, 2008) .................16

16
*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002)....................................................................9, 18

17
18
*Christianson v. West Publ'g Co.*,
    149 F.2d 202 (9th Cir. 1945)..........................................................................8

19
20
*Community Dental Servs. v. Tani*,
    282 F.3d 1164, *reh'g denied* No. 00-56450, 2002 U.S. App. LEXIS 7504
    (9th Cir. Ap. 24, 2002)............................................................................4, 5

21
22
*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006)...............................................................passim

23
24
*Gable v. Nat'l Broad. Co.*,
    727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd* No. 10-55420, 2011 U.S. App.
    LEXIS 12156 (9th Cir. Jun. 16, 2011) ...........................................................6

25
26
*Harper & Row Publishers, Inc. v. The Nation Enters.*,
    471 U.S. 539 (1985) ...................................................................................10

27
*Harvest v. Castro*,
    531 F.3d 737 (9th Cir. 2008)......................................................................5, 6

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

# **TABLE OF AUTHORITIES**

**Page(s)**

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999) .......................................................................... 16

*Hoffman v. Impact Confections, Inc.*,
No. 06cv00489 BTM(NLS), 2008 U.S. Dist. LEXIS 96430 (S.D. Cal. Nov.
26, 2008), *aff'd* 369 Fed. Appx. 823 (9th Cir. 2010) ......................................... 5

*Jacobsen v. Deseret Book Co.*,
287 F.3d 936 (10th Cir. 2002) ............................................................................ 10

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
12 F.3d 527 (5th Cir.), *cert. denied* 510 U.S. 1202 (1994) ................................ 15

*Kouf v. Walt Disney Pics. & Tel.*,
16 F.3d 1042 (9th Cir. 1994) ..................................................................... 6, 9, 11

*Latshaw v. Trainer Wortham & Co.*,
452 F.3d 1097 (9th Cir. 2006) ..................................................................... passim

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) .............................................................................. 9

*Mattel, Inc. v. MGA Entm't, Inc.*,
616 F.3d 904 (9th Cir. 2010) ......................................................................... 7, 14

*Metcalf v. Bochco*,
294 F.3d 1069 (9th Cir. 2002) ....................................................................... 17, 18

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) ............................................................................ 10

*Olson v. Nat'l Broad. Co.*,
855 F.2d 1446 (9th Cir. 1988) ............................................................................ 15

*Pincay v. Andrews*,
389 F.3d 853 (9th Cir. 2004) (en banc), *cert. denied* 544 U.S. 961 (2005) ........ 4

*Pioneer Invs. Servs. Co. v. Brunswick Assocs. Ltd.*,
507 U.S. 380 (1993) ................................................................................... 3, 4, 7

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) ............................................................................ 12

*Rosenfeld v. Twentieth Century Fox Film Corp.*,
No. CV 07-7040 (AHM)(FFMx), 2009 U.S. Dist. LEXIS 9305 (C.D. Cal.
Jan. 28, 2009) ...................................................................................................... 14

Mitchell
Silberberg &
Knupp LLP

4259333.1

# TABLE OF AUTHORITIES

**Page(s)**

*Satava v. Lowry,*
    323 F.3d 805 (9th Cir. 2003) ....................................................................... 17

*Segrets, Inc. v. Gillman Knitwear Co.,*
    207 F.3d 56 (1st Cir.), *cert. denied* 531 U.S. 827 (2000) ................................... 9

*Shaw v. Lindheim,*
    919 F.2d 1353, *reh'g denied* No. 88-667, 1990 U.S. App. LEXIS 20420
    (9th Cir. Nov. 23, 1990) .......................................................... 10, 13, 16, 18

*Shwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000) ....................................................................... 11

*Walker v. Time Life Films, Inc.,*
    615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd* 784 F.2d 44 (2d Cir. 1986) ................. 11

*Warner Bros., Inc. v. American Broad. Cos.,*
    720 F.2d 231 (2d Cir. 1983) ........................................................................ 13

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996) .............................................................. 14, 15, 16

*Yniques v. Cabral,*
    985 F.2d 1031 (9th Cir. 1993) ....................................................................... 8

## OTHER AUTHORITIES

12-60 *Moore's Federal Practice* (2011)
    § 60.2 .................................................................................................. 3, 4
    § 60.48 ................................................................................................. 4, 6

Federal Rules of Civil Procedure
    Rule 12(b)(6) ...................................................................................... 1, 2, 8
    Rule 59(b) ................................................................................................. 3
    Rule 60 ..................................................................................................... 1
    Rule 60(b) ......................................................................................... 1, 3, 4
    Rule 60(b)(1) ............................................................................... 3, 4, 7, 8
    Rule 60(b)(6) ....................................................................................... passim

Mitchell
Silberberg &
Knupp LLP

4259333.1

iii        CASE NO.  10-CV-1051 AJB WVG

TABLE OF AUTHORITIES

# I.   __INTRODUCTION__[1]

Plaintiff's motion (the "Motion") is frivolous.  She fails to set forth any ground under Fed. R. Civ. Pro. 60(b) for relief from the Court's order and judgment (the "Order") dismissing the Complaint under Fed. R. Civ. P. 12(b)(6).  The Motion is based on a misunderstanding of (i) the applicable standards for obtaining relief under Rule 60(b); (ii) the circumstances surrounding the suspension of Kevin J. Mirch, one of Plaintiff's previous attorneys; and (iii) the Ninth Circuit's extrinsic test for determining copyright infringement.

The Motion primarily asserts that Plaintiff's previous attorneys, The Mirch Law Firm, failed to provide Plaintiff with adequate representation, thereby resulting in a wrongful judgment. Plaintiff cites the disciplinary action taken against Kevin Mirch, one of Plaintiff's lawyers, in support of this assertion.  However, this disciplinary action took effect after the Court issued its Orders, and in any event would be an insufficient basis for granting relief under Rule 60.

Moreover, Plaintiff lost this case, not because of anything that her previous attorneys did or did not do, but because her claims lack merit as a matter of law.  Quite simply, the works at issue are not substantially similar in protected expression.  Indeed, Plaintiff's Motion merely underscores how meritless her position is:  the Motion largely parrots most of the flawed arguments and inaccurate factual assertions that The Mirch Law Firm previously presented in opposition to Defendants' motions to dismiss.  The Motion should therefore be denied.

# II.   __PROCEDURAL BACKGROUND__

Plaintiff, through her prior counsel The Mirch Law Firm, filed the first complaint in this action against Defendants on May 17, 2010.  Plaintiff subsequently amended her complaint by filing a First Amended Complaint on August 9, 2010.  Plaintiff alleged that Defendants' movie *Avatar* infringed the copyright to her self-published book *Sheila The Warrior: The Damned*. FAC, ¶¶ 72-90.  Plaintiff also sought relief for false advertising.  *Id.*, ¶¶ 92-96.

---

[1] This opposition memorandum is filed on behalf of Defendants Twentieth Century Fox Film Corporation (erroneously sued as "Twentieth Century Fox"); Dune Entertainment LLC (erroneously sued as "Dune Entertainment, Inc."); Lightstorm Entertainment, Inc. (erroneously sued as "Light Storm Entertainment, Inc.") and James Cameron.

1    After obtaining an extended time to respond, on October 15, 2010 Defendants moved

2    under Fed. R. Civ. Pro. 12(b)(6) to dismiss the First Amended Complaint.   Defendants also asked

3    the Court to take judicial notice of copies of the works at issue.  Defendants based their motion,

4    *inter alia*, on the ground that as a matter of law, the works at issue are not substantially similar in

5    protected expression.

6    On July 13, 2011, the Court took judicial notice of the works at issue, granted Defendants'

7    motion, and dismissed Plaintiff's First Amended Complaint with leave to amend.  The Court

8    concluded that "[i]n the context of a Rule 12(b)(6) motion in a copyright infringement case,

9    dismissal is proper where the works at issue are, as a matter of law, not substantially similar."

10   Docket No. 46 at 4.  The Court also concluded that "Plaintiff failed to plead sufficient facts to

11   show Defendants' movie is substantially similar to protectable elements of her copyrighted novel

12   in plot, characters, setting, theme, dialogue, mood, pace, or sequence of events."  *Id.*  In other

13   words, Plaintiff failed to satisfy even one element of the Ninth Circuit's "extrinsic" test for

14   determining substantial similarity as a matter of law.

15   Plaintiff filed a Second Amended Complaint on August 1, 2011.  Plaintiff inserted

16   additional allegations regarding claimed similarities between the works at issue and again asserted

17   copyright claims as well as a false advertising claim.  SAC, ¶¶ 86-110.  Defendants again moved

18   to dismiss on August 15, 2011, and once more based their motion, *inter alia*, on the lack of

19   substantial similarity between the works at issue.  On September 26, 2011, the Court granted the

20   motion with prejudice due to the futility of allowing further amendment.  The Court again found

21   that the works at issue were not substantially similar under any element of the extrinsic test.

22   Two weeks later, on October 11, 2011, The Mirch Law Firm attempted to withdraw from

23   its representation of Plaintiff.  This attempted withdrawal followed disciplinary action against

24   Kevin Mirch by the State Bar of California, which resulted in Mr. Mirch's license being

25   suspended for six months effective on October 9, 2011.  The basis for the disciplinary action,

26

27

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

1  which was stipulated to by Mr. Mirch on May 16, 2011, was the pursuit by Mr. Mirch of

2  "frivolous and unfounded theories of recovery."[2]

3      Importantly, Mr. Mirch's law partner, Marie Mirch, was not disciplined and continues to

4  practice law.  Ms. Mirch signed many of the papers filed in this case, including the Second

5  Amended Complaint and the opposition memoranda related to both of Defendants' motions to

6  dismiss.  Ms. Mirch also planned to represent Plaintiff at the hearing on Defendants' first motion

7  to dismiss, which was taken off calendar by the Court.  Ms. Mirch's colleague, Eric Hanson,

8  whose name also appeared on Plaintiff's papers, continues to practice with the firm as well.

9  ### III.     THE STANDARDS FOR RELIEF UNDER RULE 60(b)(1) AND 60(b)(6)

10      "Rule 60(b) enables a court to grant relief from a judgment in circumstances in which the

11  need for truth outweighs the value of finality in litigation.  … The scope of relief that may be

12  obtained under Rule 60(b) is strictly limited."  12-60 *Moore's Federal Practice* § 60.2 (2011).  In

13  her Motion, Plaintiff  invokes Rule 60(b)(1) and (b)(6) as grounds for relief.[3]

14      Rule 60(b)(1) gives the Court discretion to grant relief if a judgment was issued as a result

15  of "mistake, inadvertence, surprise, or excusable neglect."  *Bateman v. U.S. Postal Serv.*, 231 F.3d

16  1220, 1223 (9th Cir. 2000).  Under this rule, a party is accountable for the mistakes and

17  negligence, if any, of her counsel.  *See Pioneer Invs. Servs. Co. v. Brunswick Assocs. Ltd.*, 507

18  U.S. 380, 396-97 (1993) ("clients must be held accountable for the acts and omissions of their

19  attorneys").  Thus, "the proper focus is upon whether the neglect of [parties] *and their counsel* was

20  excusable."  *Id.* (emphasis in original).[4]

21  ───────────────────

22  [2] The papers related to Mr. Mirch's suspension are attached to the Patel Declaration (Docket No. 57-2), submitted in support of Plaintiff's Motion.

23  [3] The remaining subsections of Rule 60(b), which have not been raised and are not applicable,
24  provide for relief where: newly discovered evidence is presented that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party
25  took place; the judgment is void; or the judgment has been satisfied, released, or discharged, is
26  based on an earlier judgment that has been reversed or vacated, or applying the judgment prospectively is no longer equitable.

27  [4] In the typical Rule 60(b)(1) case, a party seeks relief from a judgment issued after the party misses a filing deadline.  In such a case, courts apply four equitable factors to determine whether the negligent conduct is excusable.  *See Bateman*, 231 F.3d at 1223-24 ("the factors recited in
(…continued)

Mitchell
Silberberg &
Knupp LLP
4259333.1

3      CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1    Although "neglect encompasses negligence and carelessness" (12-60 *Moore's Federal*

2    *Practice* § 60.2), the United States Supreme Court has stated that "inadvertence, ignorance of the

3    rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507

4    U.S. at 392.  "Generally speaking, Rule 60(b) is not intended to remedy the effects of a deliberate

5    and independent litigation decision that a party later comes to regret through second thoughts or

6    subsequently-gained knowledge that corrects prior erroneous legal advice of counsel." *Latshaw v.*

7    *Trainer Wortham & Co.*, 452 F.3d 1097, 1099 (9th Cir. 2006).  Thus, even acts of malpractice

8    constituting "intentional attorney misconduct" do not justify relief under Rule 60(b)(1).  *Id.* at

9    1101.

10    Such "gross negligence" may constitute grounds for relief under Rule 60(b)(6), which

11    provides courts with discretion to set aside judgments for any "reason that justifies relief."

12    *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168, *reh'g denied* No. 00-56450, 2002 U.S.

13    App. LEXIS 7504 (9th Cir. Ap. 24, 2002).  However, gross negligence only justifies relief under

14    60(b)(6) where an attorney's failings resulted in a *default* judgment or dismissal for failure to

15    prosecute.  *See Latshaw*, 452 F.3d at 1103 ("Pursuant to *Tani*, *in the context of default judgments*,

16    we now distinguish between 'a client's accountability for his counsel's neglectful or negligent

17    acts[, which does not merit Rule 60(b)(6) relief,] and his responsibility for the more unusual

18    circumstance of his attorney's extreme negligence or egregious conduct[, which does].'")

19    (emphasis added); 12-60 *Moore's Federal Practice* § 60.48 ("Outside the context of default

20    judgments and dismissals with prejudice for failure to prosecute [] the Ninth Circuit does not

21    recognize gross negligence of the movant's counsel, or event intentional misconduct of counsel, as

22    a ground for relief under Rule 60(b)(6).").

_____

24    (…continued)
*Pioneer* … 'provide a framework with which to determine whether missing a filing deadline
25    constitutes excusable neglect'"), *quoting Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381
(9th Cir. 1997); *see also Pincay v. Andrews*, 389 F.3d 853, 855-56 (9th Cir. 2004) (en banc), *cert.*
26    *denied* 544 U.S. 961 (2005) (applying the four factors:  "(1) the danger of prejudice to the non-
moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the
27    reason for the delay, including whether it was within the reasonable control of the movant, and (4)
whether the moving party's conduct was in good faith").

Mitchell
Silberberg &
Knupp LLP

4259333.1

In cases like the one at bar, where no default judgment or dismissal for failure to prosecute (or any missed filing deadline) is at issue, Rule 60(b)(6) must be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008), *quoting Latshaw*, 452 F.3d at 1103. The test for determining whether Rule 60(b)(6) should be invoked is whether the movant can "demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion." *Id.*

## IV.   NO EXTRAORDINARY CIRCUMSTANCES EXIST TO JUSTIFY RELIEF UNDER RULE 60(b)(6)

Plaintiff bases her Motion primarily on the claim that The Mirch Law Firm committed gross negligence. Motion at 4-5. Plaintiff cannot point to any "gross negligence" committed by The Mirch Law Firm. But even if she could, she would state no grounds for relief under Rule 60(b)(6), because gross negligence of counsel justifies setting aside a judgment only where a party defaults or fails to prosecute an action. *See Hoffman v. Impact Confections, Inc.*, No. 06cv00489 BTM(NLS), 2008 U.S. Dist. LEXIS 96430, at *11 (S.D. Cal. Nov. 26, 2008) ("[T]he Ninth Circuit has declined to expand the holding of *Tani* beyond the default judgment context."), *aff'd* 369 Fed. Appx. 823 (9th Cir. 2010).

Plaintiff's attempt (Motion at 4, 5) to justify relief based on alleged gross negligence by relying on *Community Dental v. Tani* therefore fails to understand current Ninth Circuit law. In *Tani*, an attorney "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so." 282 F.3d at 1170. Despite the attorney's failure to timely file, or properly serve, an answer, he "explicitly represented to [his client] that the case was proceeding properly." *Id.* at 1171. The attorney failed to respond to a motion to strike the answer and missed related hearings. *Id.* Given that the client did not learn of the attorney's misconduct until after the court issued a default judgment against the client, the Ninth Circuit concluded that the gross negligence of the attorney justified relief under Rule 60(b)(6). *Id.* at 1171-72. However, four years later, the Ninth Circuit explained in *Latshaw* that *Tani*'s holding was dependent on the fact

Mitchell
Silberberg &
Knupp LLP

4259333.1

that a default judgment was issued due to an attorney's gross negligence. *Latshaw*, 452 F.3d at 1103. Where a judgment does not result from default or a failure to prosecute, gross negligence is not a ground for relief under Rule 60(b)(6). 12-60 *Moore's Federal Practice* § 60.48.

Thus, Plaintiff's Motion fails to articulate any extraordinary circumstances justifying relief. Plaintiff has not been injured in any manner that was beyond her control. *See Harvest*, 531 F.3d at 749 (stating standard under Rule 60(b)(6)). Although she claims that The Mirch Law Firm never informed her that Kevin Mirch would be sanctioned by the State Bar of California, the suspension did not take effect until October 9, 2011, after the Court ruled on Defendants' motion to dismiss. Patel Decl., Docket No. 57-2, Ex. A, at 1.

In addition, Marie Mirch, not Kevin Mirch, was responsible for signing most of the papers filed by Plaintiff in the case. Plaintiff missed no filing deadlines. And, Plaintiff's Motion acknowledges that Plaintiff participated in crafting the arguments her counsel put forward. Motion at 5. Even if Plaintiff was not aware of Mr. Mirch's disciplinary problems, she clearly paid attention to what took place in the case and could have changed attorneys at any time, including, for example, after the Court dismissed her First Amended Complaint. Plaintiff is accountable for her choice of counsel. *See Latshaw*, 452 F.3d at 1104 ("Though [plaintiff's] decision may have been driven by inept or erroneous advice or conduct of her counsel, neither the alleged negligence at issue nor the purported fraud on the court fall among those exceptional circumstances meriting Rule 60(b)(6) relief.").

Moreover, Plaintiff's claim that she was irreparably injured because she lost her constitutional right to a jury trial is mistaken. Motion at 5. For the reasons discussed below, no reasonable juror could conclude that substantial similarity is present. Dismissal was entirely appropriate. "A plaintiff who cannot satisfy the extrinsic test necessarily loses …, because a jury cannot find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 831 (C.D. Cal. 2010), *aff'd* No. 10-55420, 2011 U.S. App. LEXIS 12156 (9th Cir. Jun. 16, 2011) (unpublished), *quoting Kouf v. Walt Disney Pics. & Tel.*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Mitchell
Silberberg &
Knupp LLP
4259333.1

6      CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1  **V.      THE MIRCH LAW FIRM'S CONDUCT DOES NOT JUSTIFY RELIEF UNDER**

2  **RULE 60(B)(1)**

3         Plaintiff's Motion fairs no better under Rule 60(b)(1) than it does under Rule 60(b)(6).

4  Under 60(b)(1), Plaintiff is accountable for the mistakes and negligence, if any, of her counsel.

5  *See Pioneer*, 507 U.S. at 396-97 ("clients must be held accountable for the acts and omissions of

6  their attorneys").  Even if The Mirch Law Firm performed inadequately, its sub-par representation

7  is not excusable.  *See Latshaw*, 452 F.3d at 1101 (even acts of malpractice constituting

8  "intentional attorney misconduct" do not justify relief under Rule 60(b)(1)).

9         Plaintiff also fails to point to any compelling legal arguments that The Mirch Law Firm

10  failed to present.  In fact, as discussed further below, Plaintiff's current counsel, The Patel Law

11  Firm, ironically makes many of the same unavailing arguments that The Mirch Law Firm raised;

12  cites to inapplicable decisions from other circuits, as The Mirch Law Firm did; fails to cite, much

13  less distinguish, the most recent published Ninth Circuit opinions on the extrinsic test for

14  determining substantial similarity in protected expression, as the Mirch Law Firm did;[5] and

15  misstates clear rules of law, as The Mirch Law Firm did.

16         The equities also weigh against granting Plaintiff's Motion.  If Defendants are forced to

17  respond to Plaintiff's meritless argument for a fourth time, they will be significantly prejudiced

18  due to the significant costs associated with filing a third motion to dismiss.  In contrast, Plaintiff

19  can pursue an appeal to the Ninth Circuit if she and her new counsel truly believe that the Court

20  erred by dismissing the Second Amended Complaint.

21

22

23

24

25  _____

    [5] Plaintiff fails even to cite, much less distinguish, *Bissoon-Dath v. Sony Comp. Entm't Am. Inc.*,
26  653 F.3d 898 (9th Cir. 2011) (affirming and adopting *Bissoon-Dath v. Sony Comp. Entm't Am.
    Inc.,* 694 F. Supp. 2d 1071 (N.D. Cal. 2010)); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904 (9th
27  Cir. 2010); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010); and *Funky Films,
    Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006).

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

7                    CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

## VI.  THE COURT CORRECTLY DISMISSED PLAINTIFF'S CLAIMS ON THE MERITS

Plaintiff's Motion should be denied for another reason:  to justify relief under Rule 60(b)(1) or 60(b)(6), Plaintiff needs to demonstrate that the Court erred by concluding that *Avatar* is not substantially similar in protected expression to *Sheila The Warrior: The Damned*.  *See Latshaw*, 452 F.3d at 1103 (requiring an "erroneous judgment" for relief under Rule 60(b)(6)); *Yniques v. Cabral*, 985 F.2d 1031, 1034 (9th Cir. 1993) ("we have held that a district court's erroneous reading of the law is a 'mistake' sufficient to require reconsideration of an order").  Thus, Plaintiff devotes nearly all of her memorandum in support of her Motion to re-litigating the issue of substantial similarity.  Motion at 6-20.  In the fourteen pages of argument focused on this issue, however, Plaintiff fails to point to *any* error in the Court's recitation or application of the legal standards.

### A.  *The Substantial Similarity Standard*

In the portion of its Order discussing the substantial similarity test at the motion to dismiss phase, the Court correctly stated that "[i]n the context of a Rule 12(b)(6) motion in a copyright case, dismissal is proper where the works at issue are, as a matter of law, not substantially similar."  Order at 4.  The Court also stated that "[t]he similarities alleged by [P]laintiff must be from the particular expression of Plaintiff's ideas, not the general ideas themselves, because general ideas are not protected by Plaintiff's copyright."  *Id.*  Finally, the Court explained that "Plaintiff must meet the Ninth Circuit extrinsic test and allege articulable similarities between the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events."  *Id.*

The Court's Order clearly articulated established Ninth Circuit rules on the subject.  *See Benay*, 607 F.3d at 624 ("'The extrinsic test is an objective test based on specific expressive elements: the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works.'  'A court must take care to inquire only whether the protect[able] elements, standing alone, are substantially similar.'") (internal citations omitted); *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both

Mitchell
Silberberg &
Knupp LLP

4259333.1

8        CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1  before the court, capable of examination and comparison, non-infringement can be determined on

2  a motion to dismiss.").

3      Nevertheless, Plaintiff's Motion criticizes the Court's application of these established rules

4  to the works at issue.  First, Plaintiff argues that the Ninth Circuit does not require a plaintiff to

5  show substantial similarity for every element of the extrinsic test to survive a motion to dismiss.

6  Motion at 6.  This contention is irrelevant given that (i) the Court nowhere held that Plaintiff

7  needed to meet such a burden and (ii) Plaintiff failed to meet *even one* element of the test.

8      Second, Plaintiff claims that the Court should "dismiss the matter only if there are no

9  similarities at all."  Motion at 1.  This is wrong.  The Ninth Circuit repeatedly has explained that

10  "random similarities scattered throughout the works" do not give rise to substantial similarity of

11  protected expression under the extrinsic test.  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d

12  815, 825 (9th Cir. 2002); *Kouf*, 16 F.3d at 1045-46; *Litchfield v. Spielberg*, 736 F.2d 1352, 1356

13  (9th Cir. 1984).  Neither do similarities that arise out of mere ideas or *scenes a faire* satisfy the

14  extrinsic test.  *Bissoon-Dath*, 694 F. Supp. 2d at 1079.

15      Third, Plaintiff repeatedly asserts that the Court should have disregarded the concrete,

16  substantial differences between the works in favor of focusing on abstract similarities.  *See, e.g.*,

17  Motion at 7, 13, 14, 16.  The Ninth Circuit does not sanction such an approach.  *See Benay*, 607

18  F.3d at 626 ("The most similar characters in the two works are the American protagonists, but the

19  *differences* between them at least equal the similarities.") (emphasis added); *Funky Films*, 462

20  F.3d at 1078 ("At first blush, these apparent similarities in plot [in the works at issue] appear

21  significant; however, an actual reading of the two works reveals greater, more significant

22  *differences* and few real similarities … .") (emphasis added).

23      Finally, Plaintiff argues that Defendants, by pointing out the differences between the

24  works, have somehow demonstrated their guilt.  *See* Motion at 14 ("reliance on such differences

25  may be construed as an attempt to avoid liability, and may actually highlight the relevant

26  similarity").  However, the First Circuit case relied on by Plaintiff for this proposition, *Segrets,*

27  *Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 65 (1st Cir.), *cert. denied* 531 U.S. 827 (2000),

28  involved "identical" copying by the defendant of the plaintiff's copyrighted clothing design with

Mitchell
Silberberg &
Knupp LLP

4259333.1

9      CASE NO.  10-CV-1051 AJB WVG

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1   only "trivial variations" that were intended to cover the defendant's tracks.  That case, like many

2   of the cases relied on by Plaintiff, is clearly distinguishable from the instant case because there is

3   *no* material from *Sheila* that is identically copied in *Avatar*.[6]  Indeed, there is nothing in *Avatar*

4   that was copied from *Sheila* at all.

5   **B.**   ***Plaintiff Yet Again Fails to Apply the Extrinsic Test Properly***[7]

6   ***Plot.***  Plaintiff claims in her Motion that substantial similarity exists between the plots of

7   the works at issue, but the chart she includes in her Motion only reiterates elements from *Sheila*

8   already considered by the Court.  Motion at 8-11; Order at 4.  Plaintiff argues that this case is

9   analogous to *Shaw v. Lindheim*, 919 F.2d 1353, 1363, *reh'g denied* No. 88-667, 1990 U.S. App.

10   LEXIS 20420 (9th Cir. Nov. 23, 1990), a case involving alleged infringement of a television

11   treatment about a character called "the Equalizer" in a subsequently produced series by the same

12   name and built around a similar character.  Motion at 8.  However, in *Shaw*, the Ninth Circuit

13   focused on concrete similarities rather than the abstractions relied on by Plaintiff and dismissed

14   twice by this Court.  For example, the *Shaw* opinion highlighted that both works contained

15   criminal organizations that "attempt[ed] to kill a prospective Equalizer client, who ha[d]

16   discovered their operation, by means of an oncoming truck."  *Shaw*, 919 F.2d at 1363.   "In both

17   scripts, the uninvited Equalizer appear[ed] at a party in a tuxedo.  In both, the Equalizer

18   confront[ed] the candidate/blackmail victim after a campaign speech."  *Id.*

19   None of the scenes from *Avatar* and *Sheila* relied upon by Plaintiff share any analogous

20   detailed substantial similarities.  To the contrary, this case is governed by the recent Ninth Circuit

---

6 Thus, cases like *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004), which applied a "fragmented literal similarity" standard where the defendants "sampled" a portion of the plaintiff's musical composition, and *Harper & Row Publishers, Inc. v. The Nation Enters.*, 471 U.S. 539, 565 (1985), which applied the test for determining "fair use" where the defendant copied excerpts from President Gerald Ford's biography, are irrelevant.  *See* Motion at 7 (citing cases).  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 945 (10th Cir. 2002), relied on by Plaintiff (Motion at 13) also involved verbatim copying from a book and is completely distinguishable.

7 Given that the Court has reviewed the works at issues previously, as well as multiple sets of papers describing the substance of the works, Defendants do not include herein a summary of the works.  For such a summary, Defendants respectfully refer the Court to pages 2 through 9 of Defendants memorandum in support of dismissing Plaintiff's Second Amended Complaint, Docket No. 48-1.

Mitchell
Silberberg &
Knupp LLP

4259333.1

1 cases affirming dismissals of infringement claims under the extrinsic test as a matter of law. *See,*

2 *e.g.*, *Benay*, 607 F.3d at 625 (describing two works about American war veterans who traveled to

3 Japan to train the Japanese army only to fall in with samurai rebels and undergo personal

4 transformations); *Funky Films*, 462 F.3d at 1081 (describing two works where fathers who operate

5 family-run funeral homes die, resulting in the subsequent operation of the homes by two sons, one

6 of whom has been estranged from the family prior to the father's death); *Kouf*, 16 F.3d at 1045-46

7 (describing two family comedy/adventure films about people who are accidentally shrunk).

8        To the extent the chart contained in Plaintiff's Motion includes details, they are

9 mischaracterized and repetitive of her oppositions to Defendants' motions to dismiss.  For

10 example, Plaintiff yet again claims that mining is central in both works and that the mining

11 "operation is led by a greedy geologist." Motion at 9.  But mining does not account for much of

12 the plot in *Sheila*, whereas it is the primary motivation for the villains in *Avatar*.  Moreover, the

13 character Simon Burnes from *Sheila*, who is referred to as "greedy," is a minor character who dies

14 soon after he is mentioned in *Sheila*, (*Sheila* 215-220) whereas Parker Selfridge from *Avatar* is a

15 corporate executive who controls from his office a vast quasi-military force.  Selfridge plays a

16 major role in *Avatar*, survives to the end of the film, and is depicted leaving the planet after the

17 Na'vi's triumph.  Thus, at the concrete level of expression, Plaintiff's claim of similarity

18 disintegrates.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) ("The court need not

19 accept as true [] allegations that contradict facts that may be judicially noticed by the court.");

20 *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985) ("[T]he works themselves

21 supersede and control contrary allegations and conclusions, or descriptions of the works as

22 contained in the pleadings."), *aff'd* 784 F.2d 44 (2d Cir. 1986).

23        **Sequence of Events.**  In her Motion, Plaintiff includes a chart which purports to list

24 substantially similar sequences of events from *Sheila* and *Avatar*.  But the chart merely repeats

25 items from Plaintiff's chart related to *plot*, albeit in lesser detail.  These abstractions do not

26 constitute a protectable sequence of events.  *See Funky Films*, 462 F.3d at 1077 (extrinsic test

27 requires analysis of "the actual concrete elements that make up the total sequence of events").

Mitchell
Silberberg &
Knupp LLP

4259333.1

28

1    Plaintiff's mischaracterization of the works continues in her discussion of sequence of

2  events.  For example, Plaintiff states that the concluding event in both works includes a character

3  (Claire and Sully, respectively) transforming into a native inhabitant of the characters' new home

4  and "fully assimilat[ing] into the tribe."  Motion at 12.  But this is not true.  In *Avatar*, Sully is

5  finally transferred from his human body to his avatar Na'vi body in the last scene, which takes

6  place at the Tree of Souls in front of the entire Na'vi clan.  The last thing the movie's audience

7  sees is Sully's eyes open for the first time in his new body.  In *Sheila*, Claire eats mind-altering

8  nummi cakes, becomes a Crowoman, and grows wings (*Sheila* 262-69) during repeated sexual

9  encounters with her love interest, Jude.  This occurs more than 140 pages before the end of the

10  book.

11    In addition, the sequences on which Plaintiff  primarily relies include *scenes a faire* that

12  flow naturally from the unprotectable concept of a human leaving earth after losing a family

13  member and relocating in a distant world amongst aliens and expatriates, one of whom the human

14  falls in love with.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003) (no substantial

15  similarity where both works "involve[d] a magician performing an illusion as if it were a normal

16  performance, but then re-performing the same illusion and explaining to the audience how it was

17  done" because "the sequencing of first performing the trick and then revealing the secrets behind

18  the trick is subject to the limiting doctrines of merger and *scenes a faire*").

19    ***Characters.***  In its Order, the Court concluded that any similarities between the characters

20  of *Avatar* and *Sheil*a "do not rise to the level of particular expression of an idea required for a

21  successful copyright claim because such similarities stem from abstract ideas."  Order at 6.  The

22  Court also concluded that "[s]ignificant differences exist between all characters referenced by

23  Plaintiff."  *Id.*

24    In her Motion, Plaintiff argues that the Court should not have emphasized "the differences

25  between Sheila and Jake, in that Sheila is a wealthy businesswoman and Jake, a paraplegic ex-

26  Marine."  Motion at 13.  Plaintiff claims that "these differences are immaterial because they are

27  not central to the story lines."  *Id.*  This is inaccurate.  *In Avatar*, Jake's need for money to cure his

28  paraplegia and his military background are important plot points, and ones that do not exist in

Mitchell
Silberberg &
Knupp LLP

1   Plaintiff's work (Sheila is wealthy and without a connection to the military).  To dismiss Sully's

2   paraplegia as irrelevant would ignore one of his primary character traits and motivations.  Such an

3   approach would be contrary to the very standard Plaintiff relies on for comparing characters.  *See*

4   Motion at 14 ("A character is an aggregation of the particular talents and traits his creator selected

5   for him and to determine if one character is substantially similar to another, courts analyze the

6   similarity between the *totality* of the characters' attributes and traits.") (emphasis added),

7   *misquoting Warner Bros., Inc. v. American Broad. Cos.*, 720 F.2d 231, 241, 243 (2d Cir. 1983);[8]

8   *see also Benay*, 607 F.3d at 626 ("The most similar characters in the two works are the American

9   protagonists, but the differences between them at least equal the similarities."); *Funky Films*, 462

10  F.3d at 1078 ("The 'prodigal son' characters of the two works, while similar at the abstract level,

11  are markedly different in the two scripts.").

12      Plaintiff further argues that Sully and Sheila are substantially similar because "[t]heir

13  interactions are identical in that (a) they are well liked by coworkers; and (b) they butt heads with

14  their supervisors."  Motion at 15.  But if Plaintiff owned the right to create a character that butts

15  heads with her boss, countless television shows, books, movies, and theatrical plays would

16  infringe her rights.  Luckily, such abstract ideas and stock elements cannot be owned.  *See Benay*,

17  607 F.3d at 626 ("[O]nly distinctive characters are protectable"); *Bisson-Dath*, 694 F. Supp. 2d at

18  1088 (courts must be careful "to slice or filter out" mere embodiments of stock ideas).

19      Persisting in her attempt to obfuscate the significant differences between Sheila and Sully

20  by linking Sully to *both* Sheila and Claire, Plaintiff claims Sully is substantially similar to Claire

21  because "Claire and Jake share the trait of willfully transforming physically … to more fully

22  realize their relationship with their respective mates."  Motion at 15-16.  As discussed above, the

23  concrete expressions of Claire and Sully's transformations are quite distinct, in that Sully leaves

24  his paralyzed human body to inhabit his avatar Na'vi body during a public tribal ritual whereas

25

---

26  [8] Plaintiff incorrectly cites *Shaw*, 919 F.2d at 1363, for this quote.  However, the language appears nowhere in *Shaw*.  It instead derives from a Second Circuit opinion, which does not include the
27  exact quote but does state that "[a] character is an aggregation of the particular talents and traits selected for him."

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

1   Claire's healthy human body grows wings after she eats intoxicating food while having sex with

2   Jude the Crowman.  Thus, the Court correctly concluded (Order at 6) that the characters only share

3   abstract, unprotectable traits.  *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir.

4   2010) (stating that author cannot monopolize the idea of a human girl falling in love with a

5   vampire).

6       Plaintiff's comparisons of the Leafers of Tibet and the trees of Pandora are also flawed and

7   repetitive of her oppositions to Defendants' motions.  The Leafers are nothing like the trees in

8   *Avatar*.[9]  Plaintiff claims the characters are similar because "they maintain knowledge of ancestral

9   history, and they both have certain healing powers."  Motion at 16.  Such abstractions cannot be

10  owned.  *See Rosenfeld v. Twentieth Century Fox Film Corp.*, No. CV 07-7040 (AHM)(FFMx),

11  2009 U.S. Dist. LEXIS 9305 **6-7 (C.D. Cal. Jan. 28, 2009) (where plaintiff claimed works both

12  "feature[d] protagonists who exemplif[ied] the importance of believing in oneself and following

13  one's dreams" no substantial similarity existed because "such plot themes and morals are general

14  ideas, which are unprotectable, rather than *specific expressions* of ideas") (emphasis in original).

15      *Sheila*'s Crowpeople and *Avatar*'s Na'vi are also dissimilar at the level of protected

16  expression.  Traits that Plaintiff invokes, such as screaming during battle and "fighting with

17  unrelenting verve," (Motion at 16) are not protectable.  In addition, Plaintiff is wrong that the

18  Na'vi have "feathers on their bodies."  This inaccurate attempt to portray the Na'vi as "bird-like"

19  has persisted throughout Plaintiff's papers in this case and it is no truer now than it was before.[10]

20      ***Themes.***  Plaintiff argues that the Court should find that Plaintiff has satisfied the extrinsic

21  test with respect to theme unless there is an absence of *any* common theme, regardless of whether

22

23

24  [9] Defendants already thoroughly refuted this claim in their papers supporting their motion to
    dismiss Plaintiff's Second Amended Complaint.  *See* Docket No. 48-1 at 17.

25  [10] Plaintiff's categorical contention that "when certain characters are not duplicated in both works,
26  their absence is not of major significance," (Motion at 15) is also incorrect.  The Ninth Circuit has
    repeatedly noted the absence of analogous characters when applying the extrinsic test. *See, e.g.,*
    *Benay*, 607 F.3d at 627 ("There are a number of important characters in the Film and the
27  Screenplay who have no obvious parallel in the other work."); *Funky Films*, 462 F.3d at 1079
    (emphasizing characters from defendant's work who had no counterparts in plaintiff's work).

28

Mitchell
Silberberg &
Knupp LLP
4259333.1

14      CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1  that common theme is protectable.  Motion at 17.  For support, Plaintiff cites *Williams v. Crichton*,

2  84 F.3d 581, 589 (2d Cir. 1996).  However, there, the Second Circuit stated:

> Any similarity in the theme of the parties' works relates to the
> unprotectible idea of a dinosaur zoo.  Once one goes beyond this
> level of abstraction, the similarity in themes disappears.  The
> Jurassic Park works involve genetic engineering, ego, greed, and the
> consequences of man's hubris in believing that nature can be
> controlled.  No similar themes are evident in any of the Dinosaur
> World books.  *Id.*

7  In other words, just like the Court here (Order at 4-5), the Second Circuit in *Williams*

8  found no substantial similarity in theme where the only similarities related to unprotected ideas

9  and where significant differences existed otherwise.  This approach is consistent with Ninth

10  Circuit law and renders *Sheila* and *Avatar* dissimilar with respect to theme.  *See Benay*, 607 F.3d

11  at 627 (although "both works explore[d] general themes of the embittered war veteran, the 'fish-

12  out-of water,' and the clash between modernization and traditions," no substantial similarity

13  because themes arose "naturally from the premise of an American war veteran who travels to

14  Japan to fight the samurai").

15  **Dialogue.**  The Ninth Circuit requires "extended similarity of dialogue … to support a

16  claim of substantial similarity."  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).[11]

17  None of the lines of dialogue selected by Plaintiff (Motion at 18) meet this standard.  For example,

18  "I fell in love.  I fell in love with the forest and with the Omaticaya people.  And with you."

19  (*Avatar*), and "The colors of the vegetation dazzle the mind enough to fall in love with the whole

20  planet." (*Sheila* 190) share only four words in common (the unprotectable phrase "in love with

21  the") and otherwise share nothing more than the notion of falling in love with places, which is an

22  unprotected idea.

23  Second, Plaintiff's list of excerpts offers the Court nothing new.  Every one of the

24  examples Plaintiff points to was already considered and determined to be dissimilar by the Court.

---

[11] Plaintiff relies on a Fifth Circuit case, *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 535-36 (5th Cir.), *cert. denied* 510 U.S. 1202 (1994), rather than citing the applicable Ninth Circuit standard.

Mitchell
Silberberg &
Knupp LLP

4259333.1

15      CASE NO.  10-CV-1051 AJB WVG

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1   *See* Order at 5 ("The examples provided by the Plaintiff fail to show any similarities that would

2   rise to the level of being substantial.  Such examples lack similarities in vocabulary and meaning,

3   only vaguely referencing a similar abstract idea at times.").

4       ***Mood.***  Plaintiff cites *Shaw*, 919 F.2d at 1363, for the proposition that "[s]ince both works

5   are serious and suspenseful, this element is met."  Motion at 19.  *Shaw* does not provide Plaintiff

6   any support.  There, the works contained a common, yet unprotectable, mood that grew naturally

7   from the concept of an action adventure television series.  Here, some scenes may contain a

8   common "serious and suspenseful" mood, but the works overall differ significantly.  *Sheila*

9   fluctuates between characters fighting battles and having sex.  *See*, *e.g.*, *Sheila* 58, 165, 207, 302,

10  310-11, 388.  In contrast, *Avatar* contains a skirmish at the beginning of the film, but then there

11  are no battle scenes until the epic battles at the end.  Aside from a relatively chaste scene in which

12  Sully's avatar and Neytiri consummate their love for one another, there is no sex or physical

13  romance in *Avatar*.  These differences undermine Plaintiff's claim.  *See Benay*, 607 F.3d at 628

14  ("Both works contain violent action scenes.  But … the Screenplay 'has a triumphant mood' …

15  while the Film 'is more nostalgic and reflective in mood'.").

16      ***Pace.***  Plaintiff categorically states that "[e]valuation of pace involves nothing more than

17  noting if the action is rapid and tense or fast and slow."  Motion at 19.  She cites an Eleventh

18  Circuit case, *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1259 (11th Cir. 1999), for support, but

19  that case does not articulate such a broad rule regarding analyzing pace.  The Eleventh Circuit

20  merely found no similarity between two works because one work employed a "rapid and tense"

21  pace whereas the other work's pace was "slow and stately."  *Id.* at 1260.  Here, the works also

22  differ in pace.  *Avatar* takes place over a span of only a few months whereas *Sheila* spans decades

23  of time.  *See Capcom Co., Ltd, v. The MKR Group, Inc.*, No. C 08-0904 RS, 2008 U.S. Dist.

24  LEXIS 83836 **29-30 (N.D. Cal. Oct. 10, 2008) (lack of substantial similarity where one work

25  took place over many months and the other took place in a three-day period).[12]   In addition,

26

27  ───────────────────

[12] Even if the pace of the action in the two works rose and fell in a similar manner, "[p]ace,
without more, does not create an issue of overall substantial similarity."  *Campbell v. The Walt*

28                                                                                                      (…continued)

Mitchell
Silberberg &
Knupp LLP

4259333.1

16       CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1   *Sheila* appears to be set in a time period much like the present, while *Avatar* is set in 2154 A.D.

2   *See Campbell*, 718 F. Supp. 2d at 1115 ("The time period within which the movie is set is a factor

3   for determining the pace of a movie.").[13]

4   **Setting.**  Plaintiff again attempts to announce a legal rule from whole cloth when she states

5   that "[s]etting is only considered commonplace when it involves general locales such as big cities,

6   working class neighborhoods, or even the CIA headquarters."  Motion at 19.  The cases on which

7   she relies say no such thing.  In fact, the Ninth Circuit has found less common settings to

8   constitute *scenes a faire*.  *See, e.g.*, *Benay*, 607 F.3d at 627-28 ("a scene of the protagonist sailing

9   into Japan, scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and

10  battle scenes in various places in Japan … are all scenes-a-faire" in works about an American who

11  travels to Japan to train an army); *Funky Films*, 462 F.3d at 1080 (setting of "a contemporary,

12  family-run funeral home" grew naturally from an unprotected "premise").  The alleged abstract

13  similarities between Pandora and Tibet, such as "forests containing a wide diversity of colorful

14  flora and fauna," (Motion at 20) are merely ideas or *scenes a faire*.  *See* Order at 5 ("Comparisons

15  noting beautiful and colorful planets away from earth, multiple-leveled homes in trees, scientific

16  facilities, and ships from earth are not expressions of a particular copyrightable setting.").

17  ### C.   *There Is No Substantial Similarity Based on Combined Unprotected Elements*

18  Given that *Avatar* does not contain any individual protected elements from *Sheila*,

19  Plaintiff's Motion relies, as her opposition papers did previously, on *Metcalf v. Bochco*, 294 F.3d

20  1069, 1074 (9th Cir. 2002), for the proposition that a combination of unprotected elements can

21  give rise to substantial similarity of protected expression.  Motion at 13.  However,

22      [I]t is not true that *any* combination of unprotectable elements
23      automatically qualifies for copyright protection. …  [A]
        combination of unprotectable elements is eligible for copyright
24      protection only if those elements are numerous enough and their

25  (…continued)
    *Disney Co.*, 718 F. Supp. 2d 1108, 1115 (N.D. Cal. 2010), *quoting Williams v. Crichton,* 84 F.3d
26  581, 590 (2d Cir. 1996).

27  [13] Plaintiff claims that "[b]oth works in question are set in the future."  Motion at 19.  But *Sheila*
    nowhere makes explicit when the story takes place.

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

17      CASE NO.  10-CV-1051 AJB WVG
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION

1   selection and arrangement original enough that their combination
    constitutes an original work of authorship.  *Satava v. Lowry*, 323
2   F.3d 805, 811 (9th Cir. 2003) (emphasis in original).

3   Moreover, a plaintiff's sequencing of significant uncopyrightable elements is only relevant

4   to infringement where "[a] common 'pattern [that] is sufficiently concrete . . . warrants a finding

5   of substantial similarity.'"  *See Metcalf*, 294 F.3d at 1074, *quoting Shaw*, 919 F.2d at 1363.  In the

6   instant case, "the sequences of elements, and the relationships between them, are entirely

7   dissimilar."  *Bissoon-Dath*, 694 F. Supp. 2d at 1091.  Indeed, Plaintiff relies only on "random

8   similarities scattered throughout the works."  *Cavalier*, 297 F.3d at 825.

9   **VII.   CONCLUSION**

10   For the reasons stated above and in the papers Defendants filed in support of their previous

11   motions, the Court should deny Plaintiff's Motion.

12

13   DATED: November 10, 2011                MITCHELL SILBERBERG & KNUPP LLP

14

15                                          By: s/ Robert H. Rotstein
16                                              Robert H. Rotstein (SBN: 72452)
                                                Attorneys for Defendants
17                                              Twentieth Century Fox Film Corporation
                                                (erroneously sued as "Twentieth Century
                                                Fox"); Dune Entertainment LLC
18                                              (erroneously sued as "Dune Entertainment,
                                                Inc."); Lightstorm Entertainment, Inc.
19                                              (erroneously sued as "Light Storm
                                                Entertainment, Inc."), and James Cameron
20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

4259333.1

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 60 MOTION